**THE PEOPLE'S LAW FIRM, PLC**
Stephen D. Benedetto (Ariz. Bar No. 022349)
Heather Hamel (Ariz. Bar No. 031734)
Will Knight (Ariz. Bar No. 030514)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com

*Firm email for docketing purposes:*
admin@the-plf.com

*Attorneys for Plaintiff Maxima Guerrero Sanchez*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maxima Guerrero Sanchez, | Case No. |
| Plaintiff, | |
| v. | **CIVIL RIGHTS COMPLAINT**<br>**(42 U.S.C. § 1983)** |
| Paul Penzone, in his official capacity as Sheriff of Maricopa County, Arizona; Maricopa County, a political subdivision of the State of Arizona. | (JURY TRIAL DEMANDED) |
| Defendants. | |

For her Complaint against Defendants Paul Penzone and Maricopa County, Plaintiff Maxima Guerrero Sanchez, by and through undersigned counsel, hereby alleges as follows:

## **PARTIES**

1.     Plaintiff Maxima Guerrero Sanchez is an unmarried woman residing in Maricopa County, Arizona.

2.     Ms. Guerrero Sanchez is a recipient a two-year deferred action and work permit from the Deferred Action for Childhood Arrivals ("DACA") program.

3.     Defendant Paul Penzone is the elected Sheriff of the Maricopa County

Sheriff's Office ("MCSO"), and is a married man residing in Maricopa County. Sheriff Penzone is responsible for formulating, approving, implementing, and/or enforcing MCSO's policy, custom, and practice of arresting and detaining individuals based on voluntary immigration detainers. Sheriff Penzone is sued in his official capacity.

4.   Defendant Maricopa County, Arizona (the "County") is a political subdivision of the State of Arizona that can sue and be sued in its name. The County runs a law enforcement agency known as the Maricopa County Sheriff's Office, that also operates the County's jail system.

5.   The County is under a duty to run its law enforcement and jails activities in a lawful manner to preserve the peace and preserve for County residents the rights, privileges, and immunities guaranteed and secured to them by the Constitutions and laws of the United States and the State of Arizona. The County has established or delegated its law enforcement agency, MCSO, the responsibility for running its jails and establishing and implementing policies, practices, procedures, and/or customs used by jail employees employed by the County regarding the detention of individuals.

6.   Every act and omission of the employees, representatives, and agents of the Defendant Maricopa County detailed in this Complaint was performed under the color and pretense of the Constitutions, statutes, ordinances, regulations, customs, and uses of the United States of America, the State of Arizona, and Maricopa County, by their authority as employees of Maricopa County, and within the course and scope of their employment.

7.   Upon information and belief, there are currently unknown Maricopa County employees who caused or contributed to Plaintiff's injuries. The identity and roles of these individuals are uniquely within the possession of the County and Plaintiff will amend this complaint to add such responsible individuals upon discovery of their identities.

/ / /

**JURISDICTION AND VENUE**

8.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3)(4) and 1367(a). This Court has jurisdiction over Plaintiff's claims for violation of her civil rights under 42 U.S.C. § 1983.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions that give rise to this action occurred within this District within the appropriate statutes of limitations, and this Court otherwise has jurisdiction.

10.     This case presents an actual case in controversy arising under the Fourth, and Fourteenth Amendments to the United States Constitution, and under the provisions of 42 U.S.C. §§ 1983 and 1988.

**GENERAL ALLEGATIONS**

*Background to Ms. Guerrero Sanchez's Arrest*

11.     On the morning of May 25, 2020, two black men in different parts of the country were murdered by police officers.  George Floyd was murdered in Minneapolis, Minnesota, and Dion Johnson was murdered in Phoenix, Arizona.

12.     In the following days, protestors took to the streets to demonstrate in Minneapolis, Phoenix, and other American cities.

13.     On Saturday, May 30, 2020, Phoenix Police rounded up and unconstitutionally arrested 124 people; detained them for hours in vans and precincts; and eventually booked them into the county jail for the same exact charge (felony rioting).

14.     In support of each of these arrests, Phoenix Police "copied-and-pasted" the same generic probable cause statement– one that, in almost every case, was found to be constitutionally deficient by the Maricopa County Superior Court.

15.     Ms. Guerrero Sanchez was one of 124 individuals unconstitutionally arrested by the Phoenix Police Department and falsely charged with felony rioting.[1]

---

[1] *See Guerrero Sanchez v. City of Phoenix*, Case No. 2:21-cv-00934-SMB-CDB, (Ariz.

16.     After her arrest, she was transported and booked into Maricopa County's Fourth Avenue jail.

### Background of Immigration Detainers Inside MCSO

17.     The Maricopa County Sheriff's Office permits Immigration and Customs Enforcement ("ICE") to operate inside MCSO's Fourth Avenue jail.

18.     During the booking process, Maxima was interviewed by ICE officials who issued an immigration detainer request to MCSO officials.

19.     ICE has a long history of utilizing immigration detainer requests to seek the arrest of an individual for an alleged civil immigration violation.

20.     An immigration detainer requests that the law enforcement gency arrest the individual for up to an additional 48 yours beyond when its legal authority expires to allow ICE to assume custody of the individual.

21.     Defendants Sheriff Penzone and Maricopa County, through the Maricopa County Sheriff's Office, have a policy, custom and/or practice of unlawfully arresting and detaining individuals based solely on these immigration detainers.

22.     In fact, in February 2007, MCSO entered into a Memorandum of Agreement with ICE, under 8 U.S.C. § 1357(g), INA § 287(g), that permitted MCSO officers to conduct prescribed civil immigration enforcement, including issuing and executing immigration detainers.

23.     Pursuant to this § 287(g) agreement, MCSO conducted its civil immigration enforcement under direct ICE supervision.

24.     This agreement was later terminated by the Department of Homeland Security after the Department of Justice found rampant, systemic racial-profiling and constitutional violations committed by MCSO against Latinos.

25.     However, MCSO's policy, custom, and/or practice of honoring ICE's
_____
D. Ct. 2021).

immigration detainer requests and of arresting individuals on immigration detainers remains in place to this day.

26.     ICE's immigration detainer requests are not supported by probable cause, a warrant, or any other probable cause determination by a detached, neutral judicial officer; and are not in accordance with the limited warrantless arrest authority for alleged civil immigration violations.

27.     An immigration detainer is not supported by a determination that there is a reson to believe the subject individual is likely to escape before a warrant can be obtained, as is required to make a warrantless civil immigration arrest under 8 U.S.C. § 1357(a)(2).

28.     The immigration detainer request form states that the request to detain "takes effect only if you serve a copy of this form on the subject."

29.     Defendants Sheriff Penzone and Maricopa County, through the Maricopa County Sheriff's Office, have a policy, custom, and/or practice of not serving the immigration detainer on the subjected individual or otherwise affording the individual an opportunity to be heard as to why an arrest on the detainer is unlawful.

30.     Ms. Guerrero Sanchez was unlawfully arrested and detained by MCSO solely based on an immigration detainer.  This detainer was not supported by probable cause and Ms. Guerrero Sanchez was not served with an immigration detainer, nor was she afforded an opportunity to be heard about why it was unlawful.

### *Plaintiff's Criminal Case is Dismissed; She is Unlawfully Arrested by MCSO*

31.     After she was booked into jailed, Ms. Guerrero Sanchez appeared before the Maricopa County Superior Court Commissioner Melissa Zabor who reviewed her criminal charges.

32.     At this Initial Appearance, held at 8:00 p.m., Commissioner Zabor found that "there is no probable cause that [Ms. Guerrero Sanchez] committed Riot, under A.R.S. § 13-2903(A)."

33.     Finding no probable cause to support her criminal charges, Commissioner Zabor ordered that Ms. Guerrero Sanchez be immediately released from MCSO's custody and control.

34.     Ms. Guerrero Sanchez appeared before the Maricopa County Superior Court with multiple women, whose criminal cases were also dismissed and who were likewise ordered to immediately be released.  Those women were released after MCSO processed them out of jail – at approximately 12:00 a.m., four hours after their Initial Appearance at 8:00 p.m.

35.     Ms. Guerrero Sanchez, however, continued to be held by MCSO for two hours after the release of these women.

36.     Indeed, Ms. Guerrero Sanchez was held for two hours after she was processed out of jail and for two hours after she should have been released from MCSO custody.

37.     The only reason Ms. Guerrero Sanchez continued to be held for hours after she was processed out of jail was because ICE had issued an immigration detainer request to MCSO.

38.     At approximately 2:00 a.m., Ms. Guerrero Sanchez was "released" to ICE agents, who arrested her inside of MCSO's Fourth Avenue jail.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Unreasonable Seizure; Deprivation of Life and Due Process in Violation of the Fourth and Fourteenth Amendments to the United States Constitution**
**(Against Defendants Penzone and Currently Unnamed Officers)**

39.     Plaintiff hereby incorporates by reference the allegations contained in the paragraphs of this Complaint as if they were fully set forth herein.

40.     42 U.S.C section 1983 provides, in relevant part, as follows:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges

or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

42 U.S.C. § 1983.

41.     For purposes of § 1983, Plaintiff is a citizen of the United States.

42.     Defendant Paul Penzone, and the currently unknown officers who arrested Plaintiff are "persons" as that term is defined by 42 U.S.C. § 1983.

43.     Defendant Paul Penzone was, at all times relevant hereto, acting under the color of law in his capacity as the Sheriff of the Maricopa County Sheriff's Office; his acts and omissions, as well as those of unnamed officers who caused Plaintiff's injuries (who will be named as soon as their identities become known) were conducted within the scope of their official duties or employment.

44.     As the Sheriff and Chief policymaker for the Maricopa County Sheriff's Office, Defendant Penzone was aware of and authorized the arrest and detainment of Plaintiff pursuant to MCSO's policy of honoring ICE's immigration detainer requests/ pursuant to MCSO's policy of arresting individuals solely on immigration detainers.

45.     At the time of the complained-of events, the Fourth Amendment to the U.S. Constitution prohibited "unreasonable searches and seizures" and prohibited the deprivation of "liberty" without "due process of law."

46.     At the time of the complained-of events, any reasonable Sheriff would have known that the Constitution clearly establishes the right of individuals to be secured from unlawful arrests without "due process of law."

47.     Defendants arrested and detained Ms. Guerrero Sanchez based solely on an immigration detainer after at state judge ordered her released.

48.     Defendants arrested and detained Ms. Guerrero Sanchez on this immigration detainer with the intent to deprive Ms. Guerrero Sanchez of her liberty, and Defendants deprived her of her liberty.

49.     Defendants knew or should have known that their actions—namely, arresting and detaining Ms. Guerrero Sanchez based on an immigration detainer request that was not supported by probable cause, that was not served on Ms. Guerrero Sanchez, and that was not accompanied by a determination that Ms. Guerrero Sanchez was a flight risk—violatd Ms. Guerrero Sanchez's constitutional rights, and that they lacked the authority to arrest and detain Ms. Guerrero Sanchez under the governing laws and policies.

50.     As a result of Defendants' unlawful and unconstitutional conduct, Plaintiff suffered injuries and other damages and losses as described herein entitling Plaintiff to compensatory, economic, consequential and special damages in an amount to be determine at trial.

51.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

52.     In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendants under 42 U.S.C. § 1983, in that the actions of these Defendants were taken maliciously, willfully, or with a reckless disregard of Plaintiff's constitutional rights.

**SECOND CLAIM FOR RELIEF**
**False Imprisonment under Arizona Law**
**(Against All Defendants)**

53.     Plaintiff hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

54.     Defendants intentionally caused Ms. Guerrero Sanchez to be arrested and detained without having probable cause or legal justification to do so or to believe that she was in violation of immigration laws and subject to arrest, detention, or removal.

55.     Defendants intentionally caused Ms. Guerrero Sanchez to be arrested and detained without legal authority to arrest her without a warrant under federal or state law.

56.     Ms. Guerrero Sanchez was aware of her arrest and did not consent to it.

57.     At all times during Ms. Guerrero Sanchez's arrest, Defendants knew, or should have known, that they lacked the authority to arrest and detain Ms. Guerrero Sanchez under the governing laws and policies.

58.     At all times during Ms. Guerrero Sanchez's arrest, Defendants knew, or should have known, that their conduct was unlawful.

59.     As a proximate result of the actions of the Defendants and/or currently unknown officers unlawful and unconstitutional conduct, Plaintiff suffered injuries and other damages and losses as described herein entitling her to compensatory, economic, consequential and special damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Maxima Guerrero Sanchez requests that the Court enter judgment against Defendants as follows:

a.  For compensatory damages (general and special) in an amount to compensate her fully and fairly for the violations of her Constitutional Rights;

b.  For compensatory damages (general and special) in an amount to compensate her fully and fairly for her physical, mental, and emotional injuries;

c.  For nominal damages as provided for by law;

d.  For punitive damages in an amount sufficient to punish defendants and deter them from similar unconstitutional and unlawful conduct in the future;

e.  For prejudgment interest on all liquidated sums;

f.  For attorneys' fees under 42 U.S.C. §§ 1983 and 1988;

g.  For Plaintiff's costs and other expenses incurred in this action; and

h.  Such other and further relief as the Court deems just.

DATED this 31st day of May, 2021.

THE PEOPLE'S LAW FIRM, PLC
645 North 4th Avenue, Suite A
Phoenix, Arizona  85003

By:/s/ Stephen Benedetto
      Stephen D. Benedetto
      Heather Hamel

*Attorneys for Plaintiff Maxima Guerrero Sanchez*